# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN PEREZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>HIGHER ONE HOLDINGS, INC., MARK VOLCHEK, CHRISTOPHER WOLF, and JEFFREY WALLACE,<br><br>Defendants. | No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Brian Perez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Higher One Holdings, Inc., ("Higher One" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased Higher One securities from August 7, 2012 to May 12, 2014, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against Higher One and certain of its officers and/or directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Defendant Higher One provides technology-based refund disbursement, payment processing, and data analytics services to higher education institutions and students in the United States.  Some of the services it offers include FDIC-insured online checking accounts to students, as well as faculty, staff, and alumni; a debit MasterCard ATM card; and OneAccount Premier and OneAccount Edge for primary account usage.  The Company was founded in 2000 and is headquartered in New Haven, Connecticut.

3.      Higher One has a history of charging unfair fees on its campus debit cards and accounts, despite assertions from the Company that its accounts are more affordable than those offered by larger banks.  In August 2012, the Company reached a settlement with the Federal Deposit Insurance Corporation ("FDIC") whereby Higher One agreed to return approximately $11 million to college students for overcharged fees on debit cards and other practices (the "2012 Settlement").  As part of the 2012 Settlement, Higher One agreed to change the way it imposes fees and provide clear disclosures to consumers who utilize its products.  In October 2013, the Company reached an agreement to settle numerous class action lawsuits filed against the Company for violations of state consumer protection statutes and various common law claims (the "2013 Settlement"). The Company agreed to make and/or maintain certain practice changes to avoid future liability.

4. However, throughout the Class Period, Defendants (defined below) made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's marketing and disclosure practices were in violation of the Federal Trade Commission Act; (ii) the Company's allegedly improper marketing and disclosure practices would subject Higher One to potential restitution demands and civil penalties; and (iii) the amounts of potential restitution demands and civil penalties could reach levels that would cause an event of default under the Company's Credit Facility.

5. On May 12, 2014, in a Form 10-Q filed with the SEC announcing its financial and operating results for the first quarter of 2014, the Company disclosed that it is facing penalties from the Federal Reserve over alleged violations tied to its marketing of a debit account for financial aid refunds. According to the filing, such penalties could trigger a default on the Company's Credit Facility. Specifically, the Company stated:

> On May 9, 2014, the Board of Governors of the Federal Reserve System, or the Board of Governors, advised us of its determination to seek an administrative order against us with respect to asserted violations of the Federal Trade Commission Act relating to our activities with both a former and current Bank Partner and our marketing and disclosure practices related to the process by which students may select the OneAccount option for financial aid refund. We are in discussions with the Board of Governors in this matter. Any administrative order arising out of this matter is likely to include demands for material customer restitution, material civil money penalties, and changes to certain of our business practices. Although the ultimate amount of restitution or civil money penalties are subject to many uncertainties and therefore are impossible to predict, it is possible the amounts could reach levels that would cause an event of default under our Credit Facility.

6. Thus, while the Company actively touted that it had "substantially revised [the] compliance management system," since the 2012 Settlement, and had "agreed to make and/or

maintain certain practice changes," in fact, the Company continued its improper marketing and disclosure practices during the Class Period.  These practices ultimately placed the Company at risk of further sanctions.

7.      On the news, Higher One shares fell $0.90 or over 14% on heavy trading volume, to close at $5.51 on May 13, 2014.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Higher One at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures. Plaintiff resides in Miami-Dade County.

14.     Defendant Higher One is a Delaware corporation with its principal executive offices located at 105 Munson St, New Haven, CT 06511.  Higher One's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ONE."

15.     Defendant Mark Volchek ("Volchek") served at all relevant times until April 16, 2014, the Company's President and Chief Executive Officer ("CEO").

16.     Defendant Christopher Wolf ("Wolf"), beginning in March 5, 2013, served as  the Company's Chief Financial Officer ("CFO").

17.     Defendant Jeffrey Wallace ("Wallace") served at all relevant times as the Company's Vice President of Finance.

18.     Defendants referenced above in ¶¶ 15 through 17 are sometimes referred to herein, collectively, as the "Individual Defendants."

19.     Defendant Higher One and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Higher One provides technology-based refund disbursement, payment processing, and data analytics services to higher education institutions and students in the United States.  The Company provides the "Refund Management" line of disbursement services, which facilitate the

5

distribution of financial aid and other refunds to students, including Refund Management ID, Campus Payroll, PLUS Loan Refund Management, Financial Intelligence, and Accounts Payable Solution.

21.     The Company also offers a Payment Processing suite of products, such as ePayment to accept online payments; eBill to automate payer billing and processing functions; Tuition Payment Plans to personalize students' payment plans; eMarket to take alumni donations, sell event tickets, T-shirts, and other merchandise, and accept payments of event and conference registration fees; and Cashiering for cashiering functions, back office payments, and campus-wide departmental deposits.

22.     Further, the Company offers a variety of products that facilitate tuition payments and other transactions, including Campus Solutions NetPay providing electronic bill presentment and payment functionality; Campus Solutions Tuition Payment Plans that enable students and their families to make regular monthly payments; and Campus Solutions Refunds, which provide a mechanism for schools to disburse funds to students and parents. Additionally, it provides OneAccounts, which are FDIC-insured online checking accounts for students, as well as faculty, staff, and alumni; a debit MasterCard ATM card; and OneAccount Premier and OneAccount Edge for primary account usage.

### Materially False and Misleading
### Statements Issued During the Period

23.     On August 9, 2012, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by defendants Volchek and Wallace, and reiterated the Company's previously announced second quarter 2012 financial results and position (the "2Q 2012 10-Q"). In addition, the 2Q 2012 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Volchek and Wallace, stating that the financial information

contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.   The 2Q 2012 10-Q also announced the 2012 Settlement, stating in part:

> In February 2011, the New York Regional Office of the Federal Deposit Insurance Corporation, or FDIC, notified us that it was prepared to recommend to the Director of FDIC Supervision that an enforcement action be taken against us for alleged violations of certain applicable laws and regulations principally relating to our compliance management system and policies and practices for past overdraft charging on persistently delinquent accounts, collections and transaction error resolution.
>
> ***
>
> On August 8, 2012, we received a Consent Order, Order for Restitution, and Order to Pay Civil Money Penalty, or the Consent Order, dated August 7, 2012, issued by the FDIC to settle such alleged violations. Pursuant to the terms of the Consent Order, we neither admitted nor denied any charges when agreeing to the terms of the Consent Order. ***Under the terms of the Consent Order, we are required to, among other things, review and revise our compliance management system and, to date, we have already substantially revised our compliance management system.***
>
> ***
>
> As a result of the Consent Order and completion of the related examination, ***we believe that all material exposure related to this matter has been recorded and we do not expect any further losses as a result of this matter.***

[Emphasis added.]

25.   On November 6, 2012, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the third quarter of 2012. The Company reported net income of $7.3 million and diluted EPS of $0.13 on revenue of $51.2 million, compared to net income of $8.5 million and diluted EPS of $0.14 on revenue of $48.1 million in the third quarter of 2011.

26. On November 8, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Volchek and Wallace, and reiterated the Company's previously announced quarterly financial results and financial position for the third quarter 2012 (the "3Q 2012 10-Q"). In addition, the 3Q 2012 10-Q contained SOX certifications signed by defendants Volchek and Wallace, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. Moreover, the Company continued to speak deceptively about its "compliance management system" in the 3Q 2012 10-Q, stating in relevant part:

> In February 2011, the New York Regional Office of the Federal Deposit Insurance Corporation, or FDIC, notified us that it was prepared to recommend to the Director of FDIC Supervision that an enforcement action be taken against us for alleged violations of certain applicable laws and regulations principally relating to our compliance management system and policies and practices for past overdraft charging on persistently delinquent accounts, collections and transaction error resolution.
>
> ***
>
> On August 8, 2012, we received a Consent Order, Order for Restitution, and Order to Pay Civil Money Penalty, or the Consent Order, dated August 7, 2012, issued by the FDIC to settle such alleged violations. Pursuant to the terms of the Consent Order, we neither admitted nor denied any charges when agreeing to the terms of the Consent Order. **Under the terms of the Consent Order, we are required to, among other things, review and revise our compliance management system and, to date, we have already substantially revised our compliance management system.**
>
> ***
>
> As a result of the Consent Order and completion of the related examination, **we believe that all material exposure related to this matter has been recorded and we do not expect any further losses as a result of this matter.**

[Emphasis added.]

28.     On February 12, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the fourth quarter and full year of 2012. For the quarter, the Company reported net income of $12.1 million and diluted EPS of $0.22 on revenue of $49.8 million, compared to net income of $7.6 million and diluted EPS of $0.13 on revenue of $41.7 million in the same period of the prior year. For the year, the Company reported net income of $36.9 million and diluted EPS of $0.65 on revenue of $197.7 million, compared to net income of $31.9 million and diluted EPS of $0.54 on revenue of $176.3 million in the prior year.

29.     On February 19, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing that the Company hired defendant Wolf as Chief Financial Officer, effective March 5, 2013.

30.     On March 4, 2013, the Company filed an annual report on Form 10-K with the SEC which was signed by defendant Volchek, and reiterated the Company's previously announced quarterly and annual financial results and financial position (the "2012 Form 10-K"). In addition, the 2012 Form 10-K contained a SOX certification signed by defendant Volchek, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     Moreover, the Company made the following representations regarding its "compliance management system" in the 2012 Form 10-K, stating in relevant part:

> In February 2011, the New York Regional Office of the Federal Deposit Insurance Corporation, or FDIC, notified us that it was prepared to recommend to the Director of FDIC Supervision that an enforcement action be taken against us for alleged violations of certain applicable laws and regulations principally relating to our compliance management system and policies and practices for past overdraft charging on persistently delinquent accounts, collections and transaction error resolution.

***

9

On August 8, 2012, we received a Consent Order, Order for Restitution, and Order to Pay Civil Money Penalty, or the Consent Order, dated August 7, 2012, issued by the FDIC to settle such alleged violations. Pursuant to the terms of the Consent Order, we neither admitted nor denied any charges when agreeing to the terms of the Consent Order. ***Under the terms of the Consent Order, we are required to, among other things, review and revise our compliance management system and, to date, we have already substantially revised our compliance management system.***

*** 

As a result of the Consent Order and completion of the related examination, ***we believe that all material exposure related to this matter has been recorded and we do not expect any further losses as a result of this matter.***

[Emphasis added.]

32.     On May 7, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the first quarter of 2013. The Company reported net income of $9.8 million and diluted EPS of $0.20 on revenue of $57.4 million, compared to net income of $13.4 million and diluted EPS of $0.23 on revenue of $57.8 million for the same period in the prior year.

33.     On May 10, 2013, the Company filed an annual report on Form 10-K with the SEC, which was signed by defendants Volchek and Wolf, and reiterated the Company's previously announced quarterly financial results and financial position (the "1Q 2013 10-Q"). In addition, the 1Q 2013 10-Q contained SOX certifications signed by defendants Volchek and Wolf, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.     On August 8, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the second quarter of 2013. The Company reported net income of $3.6 million and diluted EPS of $0.07 on revenue of $40

million, compared to net income of $4.1 million and diluted EPS of $0.07 on revenue of $38.9 million for the same period in the prior year.

35.     On August 10, 2013, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by defendants Volchek and Wolf, and reiterated the Company's previously announced quarterly financial results and financial position (the "2Q 2013 10-Q").  In addition, the 2Q 2013 10-Q contained SOX certifications signed by defendants Volchek and Wolf, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.     On November 5, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing that the Company reached an agreement in principle on the key terms of a preliminary settlement (the "2013 Settlement") that would resolve the class action lawsuits filed in 2012 alleging violations of state consumer protection statutes and various common law claims. The press release stated, in part: "The terms of the preliminary settlement include a payment of approximately $15.0 million *and an agreement to make and/or maintain certain practice changes.*" [Emphasis added.]

37.     On November 7, 2013, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the third quarter of 2013.  The Company reported a net loss of $5.5 million or $0.11 per diluted share, on revenue of $57.1 million, compared to net income of $7.3 million and diluted EPS of $0.13 on revenue of $51.2 million for the same period in the prior year.

38.     On November 8, 2013, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by defendants Volchek and Wolf, and reiterated the Company's previously announced quarterly financial results and financial position (the "3Q 2013 10-Q").  In

addition, the 3Q 2013 10-Q contained SOX certifications signed by defendants Volchek and Wolf, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.     Moreover, the 3Q 2013 10-Q discussed the 2013 Settlement, stating in relevant part:

> In October 2013, we reached an agreement in principle on the key terms of a preliminary settlement that would resolve the class action litigation that was filed against us in 2012, referred to collectively as, In re Higher One OneAccount Multi-District Litigation. The terms of the preliminary settlement include a payment of approximately $15.0 million ***and an agreement to make and/or maintain certain practice changes***. We remain in negotiations and a final settlement agreement is contingent upon (a) reaching agreement on the remaining terms, (b) obtaining corporate approvals of the final agreement, and (c) court approval. There can be no assurance that these conditions will be satisfied as contemplated in the agreement in principle. [Emphasis added.]

40.     On February 13, 2014, the Company issued a press release and filed a Form 8-K announcing its financial and operating results for the fourth quarter and full year of 2013. For the quarter, the Company reported net income of $6.3 million and diluted EPS of $0.13, on revenue of $56.68 million, compared to net income of $12.1 million and diluted EPS of $0.22 on revenue of $49.8 million in the same period of the prior year. For the year, the Company reported net income of $14.1million and diluted EPS of $0.29 on revenue of $211.1 million, compared to net income of $36.9 million and diluted EPS of $0.65 on revenue of $197.7 million in the prior year.

41.     On March 10, 2014, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Volchek and Wolf, and reiterated the Company's previously announced quarterly financial results and financial position (the "2013 Form 10-K"). In addition, the 2013 Form 10-K contained SOX certifications signed by defendants Volchek and Wolf, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     Moreover, the Company made the following representations regarding its

"compliance management system" in the 2013 Form 10-K, stating in relevant part:

> In February 2011, the New York Regional Office of the Federal Deposit
> Insurance Corporation, or FDIC, notified us that it was prepared to
> recommend to the Director of FDIC Supervision that an enforcement
> action be taken against us for alleged violations of certain applicable laws
> and regulations principally relating to our compliance management system
> and policies and practices for past overdraft charging on persistently
> delinquent accounts, collections and transaction error resolution.
>
> ***
>
> On August 8, 2012, we received a Consent Order, Order for Restitution,
> and Order to Pay Civil Money Penalty, or the Consent Order, dated
> August 7, 2012, issued by the FDIC to settle such alleged violations.
> Pursuant to the terms of the Consent Order, we neither admitted nor
> denied any charges when agreeing to the terms of the Consent Order.
> **Under the terms of the Consent Order, we are required to, among other
> things, review and revise our compliance management system and, to
> date, we have already substantially revised our compliance management
> system.**
>
> ***
>
> As a result of the Consent Order and completion of the related
> examination, **we believe that all material exposure related to this matter
> has been recorded and we do not expect any further losses as a result of
> this matter.**
>
> ***
>
> In October 2013, we reached an agreement in principle on the key terms of
> a settlement that would resolve all of the above class action litigation that
> was filed against us in 2012. In February 2014, we executed a settlement
> agreement, the terms of which include a payment of $15.0 million to a
> settlement fund, an agreement to pay the cost of notice to the class, **and an
> agreement to make and/or maintain certain practice changes.** On
> February 14, 2014, plaintiffs asked the court to preliminarily approve the
> settlement. The court must approve the settlement before it becomes final
> and binding. There is no assurance that the court will approve the
> settlement. [Emphasis added.]

43.     On April 16, 2014, the Company issued a press release and filed a Form 8-K, announcing that Marc Sheinbaum had been appointed as President and Chief Executive Officer of Higher One, effective on that day.

44.     On May 8, 2014, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the first quarter of 2014. The Company reported Net income of $9.7 million and diluted EPS of $0.20, on revenue of $66.6 million, compared to net income of $9.8 million and diluted EPS of $0.20 on revenue of $57.4 million for the same period in the prior year.

45.     The statements referenced in ¶¶ 23--42, and 44 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (i) the Company's marketing and disclosure practices were in violation of the Federal Trade Commission Act; (ii) the Company's allegedly improper marketing and disclosure practices would subject Higher One to potential restitution demands and civil penalties; and (iii) the amounts of potential restitution demands and civil penalties could reach levels that would trigger an event of default under the Company's Credit Facility.

**The Truth Begins to Emerge**

46.     On May 12, 2014, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by Sheinbaum and defendant Wolf, and reiterated the Company's previously announced first quarter 2014 financial results and financial position (the "1Q 2014 10-Q"). The 1Q 2014 10-Q disclosed that the Company is facing penalties from the Federal Reserve that could trigger a default on the Company's Credit Facility over alleged violations tied to its marketing of a debit account for financial aid refunds. Specifically, the Company stated in part:

On May 9, 2014, the Board of Governors of the Federal Reserve System, or the Board of Governors, advised us of its determination to seek an administrative order against us with respect to asserted violations of the Federal Trade Commission Act relating to our activities with both a former and current Bank Partner and our marketing and disclosure practices related to the process by which students may select the OneAccount option for financial aid refund. We are in discussions with the Board of Governors in this matter. Any administrative order arising out of this matter is likely to include demands for material customer restitution, material civil money penalties, and changes to certain of our business practices. Although the ultimate amount of restitution or civil money penalties are subject to many uncertainties and therefore are impossible to predict, it is possible the amounts could reach levels that would cause an event of default under our Credit Facility.

47.     Thus, while the Company actively touted that it had "substantially revised [the] compliance management system," since the 2012 Settlement, and had "agreed to make and/or maintain certain practice changes," in fact, the Company continued its improper marketing and disclosure practices during the Class Period. These practices ultimately placed the Company at risk of further sanctions.

48.     On this news, shares in Higher One fell $0.90, or over 14%, on heavy trading volume, to close at $5.51 on May 13, 2014.

49.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Higher One securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of

15

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Higher One securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Higher One or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Higher One;

- whether the Individual Defendants caused Higher One to issue false and

misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Higher One securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

56.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Higher One securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Higher One securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed,

without knowledge of the omitted or misrepresented facts.

57.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

58.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

61.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

Higher One securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Higher One securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

62.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Higher One securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Higher One's finances and business prospects.

63.     By virtue of their positions at Higher One, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

64.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Higher One securities from their personal portfolios.

65.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Higher One, the Individual Defendants had knowledge of the details of Higher One's internal affairs.

66.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Higher One.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Higher One's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Higher One securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Higher One's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Higher One securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

67.     During the Class Period, Higher One securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Higher One securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Higher One securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Higher One securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

68.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of Higher One, and conducted and participated, directly and indirectly, in the conduct of Higher One's business affairs.  Because of their senior positions, they knew the adverse non-public information about Higher One's misstatement of income and expenses and false financial statements.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Higher One's financial condition and results of operations, and to correct promptly any public statements issued by Higher One which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Higher One disseminated in the marketplace during the Class Period concerning Higher One's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Higher One to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Higher One within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Higher One securities.

74.     Each of the Individual Defendants, therefore, acted as a controlling person of Higher One.   By reason of their senior management positions and/or being directors of Higher One, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Higher One to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Higher One and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

75.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Higher One.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  May 27,  2014                    Respectfully submitted,

**GOLDMAN GRUDER & WOODS, LLC**

 /s/_Bruce L. Elstein (ct01250)_____
Henry Elstein
Bruce L. Elstein
105 Technology Dr., Suite 2A
Trumbull CT 06611
Telephone: 203-880-5333
Facsimile: 203-880-3332
*Plaintiff's Co-Lead Counsel*

**POMERANTZ, LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

*Attorneys for Plaintiff*