# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------ x
BRIAN PEREZ, INDIVIDUALLY and on :
behalf of all others similarly  :
situated, and ROBERT E. LEE,    :
          Plaintiffs,           :
                                :
v.                              :  Civil No. 3:14-cv-755(AWT)
                                :
HIGHER ONE HOLDINGS, INC., MARK :
VOLCHECK, CHRISTOPHER WOLF,     :
JEFFREY WALLACE, MILES LASATER, :
DEAN HATTON, and PATRICK        :
MCFADDEN,                       :
          Defendants.           :
------------------------------ x
```

## RULING ON MOTION TO DISMISS

Lead plaintiff Brian Perez and additional plaintiff Robert E. Lee bring this class action on behalf of all persons, other than the defendants and their affiliates, who purchased Higher One Holdings, Inc. ("Higher One") securities during the period from August 7, 2012 to August 6, 2014 (the "Class Period"). The plaintiffs allege two claims for violations of the Securities Exchange Action of 1934 (the "Exchange Act"), under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, 17 C.F.R. § 240.10b. The defendants, Higher One and current or former executives at and/or directors of Higher One, have moved to dismiss the plaintiffs' Second Amended Complaint. For the reasons set forth below, the defendants' motion to dismiss is being granted in part, i.e. with respect to the false statements

alleged in paragraphs 89, 91 and 93 of the Second Amended
Complaint.

## I.    <u>FACTUAL BACKGROUND</u>

Defendant Higher One was co-founded in 2000 and is
headquartered in New Haven, Connecticut.  The company provides
products and services to higher education institutions and to
students.  Those services include financial aid refund
disbursements, educational institution performance analytics,
banking services, tuition payment plans, and financial
management.  Its products include a line of electronic refund
management and disbursement products and retail banking
products, including federally insured online deposit and
checking accounts ("OneAccounts") and a debit card.  Higher One
provides its services and products to more than 1,900 campuses
and 13 million students across the country.

Defendant Mark Volchek ("Volcheck") was a co-founder of
Higher One, and from June 2012 to April 2014 he served as Chief
Executive Officer ("CEO"); he was a Director throughout the
Class Period.  Defendant Miles Lasater ("Lasater") was a co-
founder of Higher One and, during the Class Period, he served as
its President, Chief Operating Officer ("COO"), and a Director.
He left the COO position in May 2013 and resigned as President
in January 2014.  Defendant Christopher Wolf ("Wolf") has served
as Higher One's Chief Financial Officer ("CFO") since March

2013.  Defendant Jeffrey Wallace ("Wallace") has served as
Higher One's President of Finance at all relevant times.
Defendant Dean Hatton ("Hatton") was President and CEO prior to
the Class Period and was a Director during most of the Class
Period.  Defendant Patrick McFadden ("McFadden") served as a
Director and Chairman of the Board's Audit Committee throughout
the Class Period.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the
court must accept as true all factual allegations in the
complaint and must draw inferences in a light most favorable to
the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
Although a complaint "does not need detailed factual
allegations, a plaintiff's obligation to provide the 'grounds'
of his 'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S.
265, 286 (1986) (on a motion to dismiss, courts "are not bound
to accept as true a legal conclusion couched as a factual
allegation")).  "Nor does a complaint suffice if it tenders
naked assertions devoid of further factual enhancement."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
550 U.S. at 557).  "Factual allegations must be enough to raise

a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Stores Co., 34 F.Supp.2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The court may consider a document if "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v.

Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting

Int'l Audiotext Network, Inc. v. Amer. Tel. and Tel. Co., 62

F.3d 69, 72 (2d Cir. 1995)).  "[A] plaintiff's reliance on the

terms and effect of a document in drafting the complaint is a

necessary prerequisite to the court's consideration of the

document on a dismissal motion; mere notice or possession is not

enough."  Id. (citing Cortec Indus., Inc. v. Sum Holding L.P.,

949 F.2d 42, 47-48 (2d Cir. 1991)).  The court may also consider

"public disclosure documents required by law to be, and that

have been, filed with the SEC."  Rothman v. Gregor, 220 F.3d 81,

88 (2d Cir. 2000).

        Federal Rule of Civil Procedure 8(a) requires that a

pleading contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  However, allegations of securities fraud pled under

§ 10(b) of the Exchange Act and Rule 10b-5 are subject to the

pleading requirements of Federal Rule of Civil Procedure Rule

9(b).  See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124,

1127 (2d Cir. 1994).  Rule 9(b) provides: "In alleging fraud or

mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).  "[A] complaint making such allegations

must '(1) specify the statements that the plaintiff contends

were fraudulent, (2) identify the speaker, (3) state where and
when the statements were made, and (4) explain why the
statements were fraudulent.'"  Shields, 25 F.3d at 1127-28
(quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d
Cir. 1993)).

Similarly, the Private Securities Litigation Reform Act of
1995 ("PSLRA") requires that when a plaintiff claims that the
defendant has made an untrue statement of a material fact or
omitted a material fact necessary to make a statement not
misleading, the plaintiff must "specify each statement alleged
to have been misleading [and] the reason or reasons why the
statement is misleading, and, if an allegation regarding the
statement or omission is made on information and belief, the
complaint shall state with particularity all facts on which that
belief is formed."  15 U.S.C. § 78u-4(b)(1)(2010).  Furthermore,
to state a claim for securities fraud, the plaintiff must "with
respect to each act or omission . . . state with particularity
facts giving rise to a strong inference that the defendant acted
with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(2010).
"The requisite state of mind in a Rule 10b-5 action is 'an
intent to deceive, manipulate or defraud.'"  Ganino v. Citizens
Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000) (quoting Ernst &
Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976)).

III. **DISCUSSION**

The Second Amended Complaint alleges false or misleading statements that the plaintiffs have recategorized as: (1) Higher One's legal compliance ("Legal Compliance Fraud"), (2) termination of the banking partner relationship between Higher One and Cole Taylor Bank ("Cole Taylor Fraud"), (3) Higher One's product transparency ("Products Transparency Fraud"), (4) changes in Higher One's practices as a result of the class action settlement ("Class Action Resolution Fraud") and (5) false statements and omissions by Higher One in its public statements and filings announcing its financial and operating results ("Operating Results Fraud").

The defendants argue that the Second Amended Complaint should be dismissed because the plaintiffs have failed to plead facts that show that the defendants made any actionable statement or omission and because the plaintiffs have failed to plead with particularity facts that establish a strong inference of scienter.

To state a claim for violation of Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Amgen

Inc. v. Conn. Ret. Plan and Trust Funds, 133 S. Ct. 1184, 1192 (2013) (quoting Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011)).

A plaintiff must allege "that the defendant[s] made a statement that was 'misleading as to a material fact.'" Matrixx Initiatives, 563 U.S. at 38 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 238 (1988)). The "materiality requirement is satisfied when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" Id., 563 U.S. at 38 (quoting Basic, 485 at 231-32 (2010)). "[W]hen presented with a Rule 12(b)(6) motion, 'a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" Ganino v. Citizens Utils. Co., 228 F.3d 154, 162 (2d Cir. 2000) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)). "While each allegation of fraud must be sufficiently particularized, allegations of materiality should not be considered in isolation." Manavazian v. Atec Grp., Inc., 160 F. Supp. 2d 468, 478 (E.D.N.Y. 2001).

"[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" Matrixx Initiatives, 563 U.S. at 44 (quoting 17 CFR § 240.10b-5(b)).

Courts distinguish between false or misleading statements of fact and false or misleading statements of opinion. Statements of opinion are considered false or misleading if at the time a statement was made, "the speaker did not hold the belief she professed" or "the supporting fact[s] she supplied were untrue." Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318, 1327 (2015). The plaintiff

> must identify particular (and material) facts going to the basis for the issuer's opinion--facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have--whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

Id at 1332. "[O]pinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading to a reasonable investor." Tongue v. Sanofi, 816 F.3d 199, 210 (2d Cir. 2016). "[A] reasonable investor, upon

-9-

hearing a statement of opinion from an issuer, 'expects not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at [the] time.'"  Id. (quoting Omnicare, 131 S. Ct. at 1329).  At the same time, "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts," and, therefore, "a statement of opinion 'is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way.'"  Id. (quoting Omnicare, 135 S. Ct. at 1329).

"Adequacy of disclosure is not assessed by looking at a single sentence in a vacuum, but rather the question is 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'"  Sedighim v. Donaldson, Lufkin & Jenrette, Inc., 167 F. Supp. 2d 639, 649 (S.D.N.Y. 2001) (quoting McMahan & Co. v. Wherehouse Entm't, Inc., 900 F.2d 576, 579 (2d Cir. 1990)).

> The central issue . . . is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor . . . .  Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors.  For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers. . . .  Even a statement which is literally true, if susceptible to quite another interpretation by the reasonable

investor may properly be considered a material
misrepresentation.

McMahan & Co., 900 F.2d at 579 (citations, quotation marks, and

alterations omitted).

"Courts that have determined that corporations had a duty

to disclose uncharged illegal conduct in order to prevent other

statements from misleading the public have required a connection

between the illegal conduct and the statements."  Menkes v.

Stolt-Nielsen S.A., No. 3:03CV409(DJS), 2005 WL 3050970, at *7

(D. Conn. Nov. 10, 2005).  "The connection between the alleged

inaccurate statement and the underlying conduct may not be too

attenuated, and . . . must be pled with sufficient specificity."

In re Axis Capital Holdings Ltd. Sec. Litig., 456 F. Supp. 2d

576, 588 (S.D.N.Y. 2006).

> [A]bsent a duty to cure prior misleading statements,
> [the defendant] was under no duty to disclose its
> hyper-aggressive sales tactics and quota system or to
> characterize its business model and educational
> programs in a pejorative manner.  This is because the
> securities laws do not impose a general duty to
> disclose corporate mismanagement or uncharged criminal
> conduct.

In re ITT Educ. Servs., Inc. Sec. & Shareholder Derivatives

Litig., 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (citations and

quotation marks omitted).  The court in In re ITT held that the

statements cited by plaintiffs were "not misleading because they

do not suggest that the undisclosed improper activity alleged by

Plaintiff was not occurring."  Id.  See also In re FBR Inc. Sec.

-11-

Litig., 544 F. Supp. 2d 346, 358 (S.D.N.Y. 2008) ("[P]laintiffs do not point to any specific statement in the press releases that could be interpreted by a reasonable investor as suggesting that the company or its executives had not assisted or participated in a single . . . violation.").

### A.  <u>Legal Compliance Fraud</u>

The defendants contend that the plaintiffs have not pled facts showing that the statements regarding legal compliance were false or misleading when made.  They argue that the plaintiffs' allegations regarding Higher One's legal compliance are conclusory and speculative.  It is insufficient under Rule 9(b) "to couple a factual statement with a conclusory allegation of fraudulent intent."  <u>Shields</u>, 25 F.3d at 1129.  The defendants further contend that some of the allegedly fraudulent statements were in fact optimistic statements and/or corporate puffery.  "[M]isguided optimism is not a cause of action, and does not support an inference of fraud.  [Courts] have rejected the legitimacy of alleging fraud by hindsight."  <u>Id.</u> (internal citation and quotation marks omitted).

> People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage.

<u>Id.</u> at 1129-30.

The plaintiffs allege that the statements made by the defendants that "[u]nder the terms of the [2012 FDIC] Consent Order, we are required to, among other things, review and revise our compliance management system and, to date, we have already substantially revised our compliance management system[,]" and that "[a]s a result of the Consent Order and completion of the related examination, we believe that all material exposure related to this matter has been recorded and we do not expect any further losses as a result of this matter[,]" were materially false and misleading. Second Am. Compl. ¶¶ 75-79. The defendants contend that the court has already held that these statements "are not actionable under the securities laws because they are, inter alia, merely expressions of corporate optimism, puffery, and subjective belief." Def. Rep. 1 (Doc. No. 102). The court found with respect to these statements that "the plaintiffs here have failed to plead facts establishing falsity," in part because there were no facts showing that the three CWs, whose statements the plaintiffs relied upon to establish falsity, had any personal knowledge or involvement in the revision of Higher One's compliance management system. See Ruling at 31-32 (Doc. No. 79).

With the inclusion of three additional CWs, and in particular CW5, the plaintiffs have sufficiently pled falsity with respect to the statement that Higher One had "substantially

revised [its] compliance management system," as directed by the
2012 FDIC Consent Order. "CW5 was a Compliance Assurance
Procedures Analyst at Higher One from August 2011 to October
2013[,]" who "was hired to help Higher One rework its banking
and compliance system," and "wrote Higher One's new banking
operations policies and procedures in the wake of the 2012 FDIC
Consent Order." Second Am. Compl. ¶ 33. CW5 said that by
October 2013, "ten policies and procedures mandated by the 2012
FDIC Consent Order still needed to be written," and 'called
Higher One's compliance program a 'joke.'" Second Am. Compl. ¶
79(a). CW5 also said that the "banking department head refused
to alter existing policies when CW5 pointed out problems and
told subordinates that Higher One did not have to comply with
banking rules and regulations because it was a technology
company, not a bank." Id. Because the plaintiffs plead facts
demonstrating CW5's personal knowledge of the compliance system,
and facts showing, inter alia, that the compliance management
system still lacked 10 necessary policies as of October 2013 --
fourteen months after the defendants first published the
statement in their Form Q10, filed with the SEC on August 9,
2012 -- the plaintiffs have sufficiently pled the falsity of
this statement to survive a motion to dismiss.

With respect to the statement, "we believe that all
material exposure related to this matter has been recorded and

-14-

we do not expect any further losses as a result of this matter," the court held that "this matter" "referred to the FDIC investigation and the specific violations regarding account fees, misleading advertising, and other FTC Act violations identified in the [2012] FDIC Consent Order." Ruling at 32. Because the plaintiffs did not plead facts creating a nexus between the cited conduct and future violations, the court found that the First Amended Complaint did not adequately plead facts showing this statement was false or misleading.

In the Second Amended Complaint, however, the plaintiffs added factual allegations that were not in their prior complaint, including the statements from CW4, CW5 and CW6 regarding the defendants' attitude toward compliance; statements from CWs and the revelations from the later Federal Reserve Cease and Desist Orders and 2015 FDIC Consent Order showing the defendants continued the very conduct cited in the 2012 FDIC Consent Order as constituting violations to the FTC Act; and statements from CWs showing that the defendants received warnings about their ongoing violative conduct from their own employees and from their banking partner, Cole Taylor, before it severed its relationship with Higher One. Second Am. Compl. ¶ 79(b). With the additions, the Second Amended Complaint sufficiently alleges facts that, if proven, would show a nexus between the conduct cited in the FDIC Consent Order and ongoing

violations later revealed, and that because the defendants did
not, in any material way, alter the cited conduct, the
defendants could not have reasonably believed their own
statements of corporate optimism -- that all exposure had been
recorded and that they did not expect any further losses related
to the violative conduct -- at the time the statements were
made.

Accordingly, the plaintiffs have pled actionable
misstatements and omissions with respect to Higher One's legal
compliance.

> **B.   Cole Taylor Fraud**

The plaintiffs allege that the statements by the defendants
that they had "agreed to a mutual termination" of their banking
relationship with Cole Taylor were materially false and
misleading.  The statement, in substantively identical but
slightly varied forms, appeared in Higher One's Form 8-K, filed
with the SEC on February 12, 2013 ("2/12/2013 Cole Taylor 8-K");
was made by Volchek and Lasater on 2/12/2013 Earnings Call; and
appeared in Higher One's 2012 10-K, filed with the SEC on March
4, 2013.    See Second Am. Compl. ¶¶ 83, 85, 87.

The court previously found that the plaintiffs had not
sufficiently pled facts to support an allegation that these
statements were materially false or misleading because, inter
alia, they had alleged no facts that the statement was false,

and instead, had relied upon a conclusory assertion that "[t]he only plausible inference -- supported by the facts and common sense -- is that Cole Taylor ended the relationship upon learning of Higher One's continuing misconduct and the risks to Cole Taylor." Ruling at 42 (quoting Pls.' Mem. at 36 (Doc. No. 52)). The Second Amended Complaint contains additional factual allegations not found in the prior complaint, however, including new statements from CW4, who had direct personal knowledge that Cole Taylor had expressed concerns to Higher One about its business practices three to six months prior to the termination of the relationship, and that C-level executives, including CW4, discussed the fact that "Cole Taylor terminated its relationship with Higher One in 2013 due to fears that Cole Taylor would end up in regulatory trouble related to Higher One's consent agreement or lawsuits"; and CW4's statements regarding the degree to which Higher One depended upon its relationship with Cole Taylor and Volckek's and Lasater's alleged insider sales occurring during the same time period, giving rise to an inference that Higher One would not and did not mutually agree to terminate the relationship, but rather, Cole Taylor unilaterally terminated the relationship. Second Am. Compl. at ¶ 70; see id at ¶ 73. These new factual allegations, if proven, could support a conclusion that these statements by defendants were materially false.

The court reaches a different conclusion, however, with respect to the false statements alleged in paragraphs 89, 91 and 93 and discussed in paragraphs 89 through 94.

The plaintiffs allege that the defendants made other statements related to the termination of the Cole Taylor relationship or Higher One's transition to other banking relationships that were materially false or misleading by way of omission. See Second Am. Compl. at ¶¶ 89-94. Higher One's Form 8-K, filed with the SEC on July 18, 2013, and signed by Volchek ("7/18/2013 8-K"), "stated that Higher One and Cole Taylor had 'entered into an amendment . . . to the Deposit Processing Services Agreement between them' under which 'the parties agreed to extend the term of the Agreement to October 31, 2013,'" but that "'[a]fter August 31, 2013, Cole Taylor may provide deposit services for a reduced number of accounts.'" Second Am. Compl. at ¶ 89. The 7/18/2013 8-K first "discussed payments to Cole Taylor for its services," adding that "'Higher One intends to move all accounts held at Cole Taylor to its other bank partners by August 31, 2013 and entered into the Amendment to help ensure a smooth transition in the event that it is unable to transfer all accounts by that date.'" Id.

The plaintiffs allege that the statements made by Volchek and Lasater during Higher One's earnings call with analysts and investors held on November 7, 2013 ("11/7/2013 Earnings Call")

-18-

are actionable.  See Second Am. Compl. at ¶¶ 91-92.  Lasater's
prepared remarks included statements that "compliance and
regulations remain a key focus for Higher One," and following a
discussion of changes made in conjunction with Higher One's new
banking partnership with Customers Bank, Lasater added, "In the
past year, we have made changes to the fee structure by
OneAccount to alleviate concerns regarding fees charged to
customers."  Second Am. Compl. at ¶ 91.

    Finally, the plaintiffs allege that the statements Higher
One made in its press release on February 13, 2014 ("2/13/2014
Press Release"), which was filed with the SEC as an exhibit to a
Form 8-K signed by Volchek ("2/13/2014 8-K"), in which Volchek
was quoted as saying, "We continue to operate in a difficult and
complex operating environment due in part to our relationships
with multiple bank partners that are overseen by different
regulators."  Second Am. Compl. at ¶ 93.

    The plaintiffs contend that each of these statements is
"materially false or misleading because it omitted the details"
about the true reason Cole Taylor terminated its relationship
with Higher One, and that "[h]aving chosen to discuss Higher
One's banking partner relationships, Defendants Higher One and
Volchek were under a duty to speak the whole truth, which they
violated."  Second Am. Compl. at ¶¶ 90, 94.

The court concludes that the plaintiffs fail to plead facts sufficient to substantiate their claims with regard to these statements for substantially the reasons given in the court's prior ruling.  See Ruling at 43-44.  As discussed there, "the securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct," In re ITT, 859 F. Supp. 2d at 579, and there must be "a connection between the illegal conduct and the statements," Menkes, 2005 WL 3050970, at *7.  None of these statements by the defendants suggests that the Cole Taylor relationship termination was mutual, or that the defendants were not engaging in the conduct allegedly giving rise to the Cole Taylor termination.  Additionally, having discussed any of its banking relationships generally is insufficient to give rise to an obligation to disclose uncharged criminal conduct that one of its prior banking partners found objectionable.  Indeed, had the defendants included the information as to why Cole Taylor terminated its relationship with Higher One, the statements would be no more true than they are without the additional information.  Accordingly, these statements are not actionable, and the motion to dismiss is being granted with respect to these particular statements.  See Second Am. Compl. at ¶¶ 89-90, 93-94.

Accordingly, the motion to dismiss is being granted with
respect to the false statements alleged in paragraphs 89, 91 and
93.

### C.    Products Transparency Fraud, Class Action Resolution Fraud, and Operating Results Fraud

The court agrees with the plaintiffs that the Second
Amended Complaint adequately pleads the false statements with
respect to the Products Transparency Fraud.  False statements
are identified in paragraph 96 (statements on August 7, 2012
earnings call), paragraphs 98 and 99 (response to question from
analyst on November 6, 2012 earnings call), and paragraph 101
(statements made with respect to positive changes purportedly
made to Higher Ones' products and processes on earnings calls on
February 12, 2013, May 7, 2013, August 8, 2013, November 7,
2013, and February 13, 2013 and in the press release on August
8, 2013).  The reasons these statements are false are alleged in
paragraphs 95, 97, 100, 102.

The court agrees with the plaintiffs that the Second
Amended Complaint adequately pleads false statements with
respect to the Class Action Resolution Fraud.  False statements
are identified in paragraphs 104 (statements with respect to
changes in practices Higher One had agreed to make as part of
the class action settlement made in the Form 10Q for the quarter
ending September 30, 2013, the press release on November 5,

2013, and the 2013 Form 10-K) and paragraph 106 (statements made during the November 7, 2013 earnings call). The reasons the statements are false are alleged in paragraphs 103, 105, and 107.

The court agrees with the plaintiffs that the Second Amended Complaint adequately pleads false statements, with respect to the Operating Results Fraud, which are identified in paragraphs 109 through 116 (press releases and filings with the SEC is announcing its financial and operating results for Q2 2012 through Q1 2014). The reasons the statements are false are alleged in paragraphs 108 and 117.

Accordingly the motion to dismiss is being denied with respect to the Products Transparency Fraud, the Class Action Resolution Fraud and the Operating Results Fraud.

D.  **Scienter**

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, "'a mental state embracing intent to deceive, manipulate, or defraud.'" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (citing Ernst & Ernst, 425 U.S., at 193-194, and n. 12). "A strong inference of scienter may be established by alleging either '(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or

-22-

recklessness.'" Poptech, L.P. v. Stewardship Inv. Advisors, LLC, 849 F. Supp. 2d 249, 268 (D. Conn. 2012) (citing ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009). "[O]nly if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324. "Ultimately, 'even if a plaintiff demonstrates only that an inference of scienter is at least as compelling as any nonculpable explanation for the defendant's conduct, the tie goes to the plaintiff." Poptech, 849 F. Supp. 2d at 269 (quoting City of Brockton Ret. Sys. v. Shaw Group, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008)).

When determining whether the plaintiff has adequately plead scienter, the court "must . . . evaluate 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" Poptech, 849 F. Supp. 2d at 269 (quoting Tellabs, 551 U.S. at 322-323 (emphasis original)). See also Slayton v. Am. Express Co., 604 F.3d 758, 775 (2d Cir. 2010)("We rest our conclusion "not on the presence or absence of certain types of allegations, but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as

not that defendants acted with scienter.") (citing _Avaya, Inc._, 564 F.3d at 269).

The court agrees with the plaintiffs that the defendants have offered no inference more compelling than the strong inference of scienter pled in the Second Amended Complaint for the reasons discussed by the plaintiffs in their opposition at pages 26 to 37.  The plaintiffs have adequately alleged both motive and opportunity and knowledge or recklessness.

### E.  <u>Loss Causation</u>

The court agrees with the plaintiffs that the loss causation allegations in the Second Amended Complaint are virtually identical to those in the earlier complaint and that there have been no material developments in the case law since the defendants moved to dismiss the First Amended Complaint. The court also agrees that under the circumstances present here this argument was waived.  <u>See</u> <u>Johnson v. Bryson</u>, 851 F. Supp. 2d 688, 704-05 (S.D.N.Y. 2012) ("the filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.") (quoting 5C Charles Alan Wright, Federal Practice & Procedure § 1388, at 491 (4th ed. 2009) (defendant waived venue defense by not raising it in its prior motions to dismiss)).  In any event the court finds

persuasive the plaintiffs' analysis as to why loss causation has been sufficiently alleged.

> **F.   Section 20(a) Claim**

Because the plaintiffs have established a primary violation of the securities laws, the motion to dismiss the Section 20(a) claim, control person liability, is being denied.

**IV.   CONCLUSION**

For the reasons set forth above, the motion to dismiss (Doc. No. 90) is hereby GRANTED in part and DENIED in part.  The motion to dismiss is being granted with respect to the false statements alleged in paragraphs 89, 91 and 93.

It is so ordered.

Dated this 25th day of September, 2017, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
